

FILED

AUG 2 0 2015

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL J. WOODS,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 13-194-M-DWM-JCL<br><br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

On September 19, 2013, Petitioner Daniel J. Woods filed this action under 28 U.S.C. § 2254. Woods is a state prisoner proceeding pro se.

## I. Background

On May 19, 2010, Woods was charged in the Fourth Judicial District, Missoula County, with one count of Incest in violation of Montana Code Annotated § 45-5-507. The Information charging Woods stated that the penalty provided was "punishable by no less than 25 years without parole or more than 100 years or life in the Montana State Prison and a fine of $50,000." (Doc. 9-8 at 1). On August 17, 2010, a change of plea hearing was held and Woods plead guilty to the charge pursuant to a written plea agreement. *See generally* (Doc. 9-2).

1

The Plea Agreement stated that Woods "agrees to enter a plea of guilty to the offense(s) of COUNT I: INCEST, a Felony; committed on or about the 7th day of May, 2010." Plea Agreement (Doc. 9-3) at 1; Judgment (Doc. 9-4) at 2. The version of the statute that was in effect at the time period outlined by the Plea Agreement provided for a mandatory 100-year sentence and 25-year no-parole restriction. § 45-5-507 (2007)[1]. The parties, however, agreed to recommend a "total sentence" of 40 years, with 15 of those years suspended. (Doc. 9-3 at 2). The plea agreement did not mention parole.

At the change of plea hearing, the district court advised Woods:

> The Court: Finally, there's a plea agreement. And, let's see what it says. It's conceivable, I guess, I could sentence you to 100 years in prison. And so, you understand that I'm not bound by this plea agreement?
>
> Woods: I understand.
>
> The Court: All right. And if I decide not to follow it, I will tell you what I'm going to do, give you a chance to think about it, and withdraw your plea and go to trial if you want. Do you understand that?
>
> Woods: Yes, sir.

---

[1] 45-5-507(5) (a) provides in pertinent part:
  If the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense, the offender:
  (i) shall be punished by imprisonment in a state prison for a term of 100 years. The court may not suspend execution or defer imposition of the first 25 years of a sentence of imprisonment imposed under this subsection (5)(a)(i) except as provided in 46-18-222, and during the first 25 years of imprisonment, the offender is not eligible for parole.

> The Court: And knowing all those things, do you still want to proceed today?
>
> Woods: Yes, sir.

(Doc. 9-2 at 5). There was no discussion of parole. There was, however, discussion of the psychosexual evaluation that was to be performed prior to sentencing. Woods, through counsel, requested that Dr. Michael Scolatti be ordered to perform the evaluation; the court granted that request. (Doc. 9-2 at 7).

By statute, during a sentencing for violation of MCA § 45-5-507, the psychosexual evaluation can, and in this case did, come into play in several different ways. First, the sentencing judge uses the evaluation as a tool to determine what tier level designation a convicted sex offender receives. *See* MCA § 46-23-509 (2)-(3). The psychosexual evaluation can also be used by the sentencing court decide if an individual should receive an exception to a mandatory minimum sentence and/or a restriction on parole eligibility. *See* MCA § 46-18-222. Because Woods was convicted of Incest, and the victim was under the age of 12 at the time of the offense, the district court was free to determine:

> based upon the findings contained in a sexual offender evaluation report prepared by a qualified sexual offender evaluator pursuant to the provisions of 46-23-509, that treatment of the offender while incarcerated, while in a residential treatment facility, or while in a local community affords a better opportunity for rehabilitation of the offender and for the ultimate protection of the victim and society, in which case the judge shall include in its judgment a statement of the reasons for its determination.

MCA § 46-18-222(6).

On December 30, 2010, a sentencing hearing was held. At the outset, the trial court stated:

> I guess I can say that I have received the presentence report and the plea agreement, and I've read them. And the plea agreement calls for 40 years with 15 suspended, which I guess is consistent with the 25-year mandatory minimum.

(Doc. 9-2 at 13). The prosecuting attorney agreed with this statement. The defendant voiced no objection. The trial court then addressed the report of the psychosexual evaluator who recommended a sentence below the mandatory 25 years. (Doc. 9-2 at 14). The court then stated its understanding that "the plea agreement is for the 25-year mandatory minimum; is that correct?" *Id.* at 14. The prosecutor assented that the agreement called for a 25- year custodial sentence. *Id.* Woods' trial counsel agreed and stated her belief that "we're bound by the plea agreement." *Id.* at 15. While all parties referred to the 25 year term as a mandatory minimum sentence, rather than a parole restriction, from the record it does appear that all parties understood the statutory provision at issue[2].

A lengthy discussion then took place regarding the appropriate Tier Level Designation of Woods. The psychosexual evaluator recommended Woods be designated as a Tier I offender and further recommended that he receive an

---

[2] By its terms, MCA 45-5-507(5) (a) does seem to conflate the idea of a 25 year mandatory minimum sentence ("[t]he court may not suspend execution or defer imposition of the first 25 years of a sentence of imprisonment imposed under this subsection") with a 25 year parole restriction ("during the first 25 years of imprisonment, the offender is not eligible for parole"). In reference to this statute, the trial court and parties understandably used the terms "mandatory minimum" and "parole restriction" nearly interchangeably.

4

exception to the parole restriction and a custodial sentence of 10 years. (Doc. 9-2 at 14; 29; 38). The court advised the parties he was considering designating Woods as a Tier III offender. (Doc. 9-2 at 28; 31). After a lengthy back and forth between the state and defense counsel, the court addressed the parties and asked what the actual practical implications of a higher offender level would be for Woods:

| | |
|---|---|
| The Court: | [I]f I sentence him to 25 years with restrictions on his parole eligibility, which I think I have to do, and he's 63 years old... |
| Woods: | 61, Your Honor. |
| The Court: | 61? Oh. There's another error in the presentence report- never mind, 63 days he served. All right, 61. Well, what's the practical difference between any of these tier level designations? |

(Doc. 9-2 at 31). The court went on to observe, "[a]s a practical matter, I don't think it's going to make a huge amount of difference because he'll be something like 85 when he's completing his prison sentence." *Id.* at 32.

The court reserved ruling on the issue of the appropriate tier designation and ordered the parties to submit simultaneous briefing outlining their respective positions. *Id.* at 39. The court then proceeded to sentencing. *Id.* The court imposed sentence as outlined in the plea agreement: 40 years Montana State Prison with 15 years suspended. *Id.*

The following discussion regarding parole occurred:

Court: The Court is going to impose some mandatory restrictions on your parole eligibility. Specifically, I find it that you, if you're released on parole, that you remain in an outpatient sex offender treatment program for the remainder of your life.

I will require that you enroll in and successfully complete a phase of the prison sexual offender treatment program, and that you not be eligible for parole unless that phase of the program has been successfully completed as certified by a sexual offender evaluation to the Board of Pardons and Parole.

And the specific sexual offender treatment programs that I'm going to order you complete are the sex offender treatment program, phases one and two. And you must complete those and have been certified to have successfully completed them by a sex offender evaluator before you're eligible for parole. And even if you get on parole, as I indicated, you will remain in outpatient sex offender treatment for the remainder of your life. And that's pursuant to 46-18-207, sub 2, Roman numeral 3, sub 2(a)(3).

State: And, Judge, could I clarify something?

Court: Sure.

State: If you're restricting his parole for 25 years, I don't think that any other parole restrictions are really necessary.

Court: Well- -

State: I think it's confusing.

Court: I don't think I've got any discretion - -

State: Well, I –

Court: -- except as provided in 2(b), which has to do with "a person who's sentenced to life without the possibility of parole, the Court shall order the following: -- including the one I just read. I don't think I've got any discretion whether it's a good idea or not.

| State: | I just don't want there to be confusion between parole eligibility if he completed those programs before the 25 years and a seemingly potentially conflicting restriction for 25. |
|---|---|
| Court: | Sure. If you are released on parole, that condition applies. And you won't be released on parole until you've completed the sex offender treatment program phases one and two, and your completion has been successfully done as certified by a sex offender evaluator. And I'm reading the statute verbatim. If it's confusion, I'm sorry but that's what the statute says. |
| | The conditions of the 15-year suspended portion of the sentence are those that are listed – and incidentally, the reason I gave you the 25 years is in part because it complies with the plea agreement and the presentence report, but I believe that it's also a mandatory minimum sentence pursuant to 45 – or excuse me, 46-18-222. And I didn't find that any of the exceptions apply in your particular case, based on what I've seen in the presentence report and the psychosexual evaluation. |

(Doc. 9-2 at 39-42).

Following this exchange, neither Woods nor his counsel expressed confusion, objected to the parole restriction, or stated their belief that such a restriction was not contemplated by the parties. *Id.* at 42-44. The Court referenced this restriction one final time before the close of the hearing:

> Now back to the reasons for the sentence. It conforms with the presentence report, the plea agreement, and I think is – I'm rejecting Dr. Scolatti's recommendation for an exception to the mandatory minimum, because, frankly, after reading that psychosexual evaluation I think that the defendant is a sexual predator and poses a risk to the community and that I should follow the statutes.

*Id.* at 44. Again, no objection was made by Woods or his counsel. *Id.* at 44-5.

Written judgment was entered on January 7, 2011. (Doc. 9-4). In that

document the court gave the following reasons for the sentence:

1. The sentence complies with the plea bargain agreement.
2. The sentence conforms to the pre-sentence report and the mandatory minimum pursuant to 46-18-222[3].
3. The Court has considered but rejects Dr. Scolatti's recommendation of 10 years as an exception to the mandatory minimum sentence.

*Id.* at 10.

On January 18, 2011, the State filed a motion asking the court to amend the judgment to reflect that Woods' parole was restricted for 25 years. (Doc. 9-5 at 1). The state opined that at the sentencing hearing, "the court did restrict Defendant's parole for the mandatory minimum of 25 years." *Id.* The state noted that Woods, through counsel, objected to the proposed amendment. *Id.*

On January 24, 2011, Woods filed an objection to the State's motion to amend the judgment. Woods argued that because the trial court imposed parole conditions, it must have contemplated Woods to be parole eligible. (Doc. 9-7 at 1-2). Woods went on to argue that the Judgment of the court anticipated parole and "contradicted the idea of any twenty-five (25) year parole restriction." *Id.* at 2. Much as he argues now, Woods stated below that by statute, he was subject to a 100 year sentence and, the argument goes, because he received a forty-year rather than 100 year sentence, the court must have contemplated an exception to the

---

[3] As set forth above, this code section actually refers to the exceptions to mandatory minimum sentences and restrictions on parole. This section, however, does denote that Woods' offense of conviction is one under which a restriction on parole eligibility is prescribed by statute, absent an exception. *See*, MCA § 46-18-222 prefatory language; *see also* subsection (6) of statute.

8

sentence and the 25 year parole restriction. *Id.* at 2. Finally, Woods argued that any ambiguity in the statutes must be resolved in his favor. *Id.* at 3.

On February 15, 2011, the court filed an Order addressing both the parole restriction and the tier level designation. (Doc. 9-6). The court noted that it "did not find any § 46-18-222 MCA exception to the § 46-18-507 MCA mandatory minimum sentence of 25 years, which includes the latter statute's requirement that '... during the first 25 years of imprisonment, the offender is not eligible for parole.' Therefore, the 25 year parole restriction is required to be imposed." (Doc. 9-6 at 1). The court went on to designate Woods as a Tier Level 2 sex offender and noted that it was imposing the mandatory minimum 25 year sentence which "was the plea agreement in this case." *Id.* at 4.

The court acknowledged that there was some confusion during the sentencing hearing, but quoted from the sentencing hearing and advised that it was the court's intention to follow the penalty prescribed by the statute because an explicit finding was made that no statutory exception applied. *Id.* at 7. The court acknowledged that it followed the plea agreement and chose not to impose the statutory maximum sentence of 100 years. The court stated that it could find nothing that prevented it from deviating from the maximum sentence. *Id.* at 8. The court went on to reason that imposing a 100 year sentence on a 61 year old man would be absurd, because there is no possibility of Woods living to be 161

9

and "even the 40 year sentence imposed in the case pushes the issue because even if [Woods] lives to be 101, it is extraordinarily unlikely that he will pose any danger to society at that age." *Id.*

Woods pursued both direct review and post-conviction relief in the state courts. On appeal Woods argued that the trial court's written judgment did not conform to the oral pronouncement of sentence. See *State v. Woods*, No. DA 11-0115, 2012 MT 11N, Order at ¶ 3 (Mont. Jan. 17, 2012). He also argued that the parole restriction was added to the written judgment post-sentencing and that it substantially increased his loss of liberty. *Id.*

The Montana Supreme Court held that the amended judgment clarified the trial court's intention, that is, that the court found no exception to the mandatory minimum sentence as outlined at MCA § 45-5-507(5)(a)(i) and, accordingly, Woods' parole was restricted for the first twenty-five years of his sentence. *Id.* at ¶ 8. The Court further held that the oral pronouncement of a criminal sentence is the legally effective sentence and that when the written judgment does not conform with the oral pronouncement, the court examines: 1) whether the defendant was afforded the opportunity to respond to its inclusion upon sufficient notice at sentencing, and 2) whether that portion of the written judgment substantively increases the defendant's loss of liberty. *Id.* at ¶ 9, quoting *State v. Johnson*, 2000 MT 290, ¶ 24, 302 Mont. 265, 14 P. 3d 480. In applying these factors, the Court

found that Woods had ample opportunity to object to the parole condition at sentencing and in his brief which was filed following the sentencing hearing but prior to the entry of the amended written judgment. *Id.* ¶ 10. The Court also reasoned that the amended written judgment did not increase Woods' loss of liberty, as he was subjected to the mandatory restriction which the trial court intended to impose. *Id.*

Woods then sought post-conviction relief in the trial court asserting ineffective assistance of counsel during the plea and sentencing proceedings; his petition was denied by the trial court. *Woods v. State*, No. DA 12-0558, Order at ¶ 4 (Mont. July 30, 2013). Woods appealed the denial of his post-conviction petition. *Id.* Again, Woods sought to overturn the 25 year restriction on his parole. *Id.* The Montana Supreme Court held that Woods did not meet his burden of establishing ineffective assistance of counsel and that the trial court properly denied his petition for post-conviction relief. *Id.* at ¶ 6.

Woods then filed his petition with this Court. (Doc. 1). Woods was advised that he needed to attempt to properly exhaust his second claim in the state court before this Court considered his petition. (Doc. 10). Woods then filed a petition for a writ of habeas corpus in the state court arguing that his sentence was facially invalid. Pet., *Woods v. Laughlin*, No. OP 15-0277 (Mont. May 1, 2015). The Montana Supreme Court denied Woods' petition. Order, *Woods v. Laughlin*, No.

OP 15-0277 (Mont. May 19, 2015).

There, the Court held it had already determined in its prior decision that the trial court expressly determined that it was not finding a sentencing exception in Woods' case. *Id.* at 2. Additionally, the Court determined that "there is no support for Woods' argument that the District Court was without authority to impose a 25-year parole restriction merely because it did not also impose a 100-year sentence." *Id.* The Court, referencing its prior decisions, found Woods' sentence to be valid. *Id.*

The Court also determined that Woods was barred from raising his claim regarding the modification of sentence in his habeas petition and that the issue had previously been decided. The Court referenced its 2012 decision wherein it was determined that Woods was afforded the opportunity to respond, and indeed did respond,to the inclusion of the mandatory parole restriction contained within the amended judgment. *Id.* at 3, citing *State v. Woods*, No. DA 11-0115, 2012 MT 11N, ¶ 10. Finally, the Court concluded that none of the claims advanced by Woods were appropriate for habeas relief because he had been adjudged guilty of an offense and had exhausted his right to appeal and had failed to demonstrate that he is incarcerated under a facially invalid sentence. *Id.* at 3-4.

II. **Woods' Claims**

Woods' petition contains two claims for relief. First, he contends that his right

to confront the witnesses against him was violated when "[a]llegations made by unknown parties" were included in the presentence report. He explains:

> A co-worker of the victim's mother, who remains unnamed, contacted counsel for the State and was given contact information for the PSI [presentence investigation report] writer. The writer was called by an unknown party and allegations were made. I denied what was told the PSI writer ever happened and all efforts to identify this unknown accuser were dismissed so I was never allowed to challenge those allegations.

Pet. (Doc. 1) at 4 ¶ 13A. Woods further explained that he was denied the right to physically face and cross-examine those that testified against him in contravention of the Confrontation Clause. (Doc. 6).

Second, Woods claims he was "[n]ot afforded an opportunity to withdraw or amend any of the Plea Agreement."

> The plea agreement did not include any parole restrictions. The mandatory sentence for the crime was 100 years, no parole consideration for the first 25 years. The agreement was for 40 years, by all accounts, an exception to the mandatory. [Nineteen] days after sentencing an amendment was made to include the 25 year parole restriction.

(Doc. 1 at 5 ¶ 13B). Woods contends that this deprived him his right to due process of law. (Doc. 6).

### III. Analysis

Although Woods' first claim appears to be barred on procedural grounds, it is clear that he is not entitled to relief on the merits of either of his claims. Accordingly it is more efficient to proceed to the merits. *See, e.g.*, 28 U.S.C. §

13

2254(b) (2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F. 2d 1195, 1198 (9th Cir. 1983). Because both of his claims lack merit, Woods' petition should be denied.

### A. Claim 1- Confrontation Clause

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. am. VI. The Confrontation Clause is recognized as a component of the Fourteenth Amendment's Due Process Clause and applies to the States. *Pointer v. Texas*, 380 U.S. 400, 405 (1965).

The Supreme Court held that the Confrontation Clause bars admission of "testimonial statements" of a witness who does not appear at trial, unless the witness is unavailable to testify, and the defendant previously had the opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). *Crawford* speaks to trial testimony, however, not sentencing. "The law on hearsay at sentencing is still what it was before *Crawford*: hearsay is admissible at sentencing, so long as it is accompanied by some minimal indicia of reliability." *U.S. v. Littlesun*, 444 F. 3d 1196, 1200 (9th Cir. 2006).

Woods was able to object to the inclusion of the hearsay statement from the unidentified neighbor that was contained in the presentence investigation report.

14

He did so through counsel at the sentencing hearing. (Doc. 9-2 at 16). The trial court agreed that this statement was "rank hearsay" and asked if the state could supply any information would give the statement some reliability. *Id.* at 17. To put the statement in context, the prosecutor explained:

> Judge, I received a call from a therapist at the Western Montana Mental Health Center who reported to me that she had a client who was extremely distraught after having this conversation with the defendant. And the person from the mental health center called to find out where this was in the process of the case. I said at that point that we were pending sentencing and I gave her the contact information for the PSI writer.

*Id.* 9-2 at 17. Woods counsel again strenuously objected to the inclusion of the hearsay statement and maintained that it was Woods' position that this information was patently false. *Id.* at 19. The court then gave its view of the objectionable statement:

> Maybe I should say this. My inclination is to follow the plea agreement and the presentence report. And I was somewhat shocked by this particular passage, but it's not going to make me deviate from what you guys have already agreed to. It just makes me maybe less sympathetic to [the psychosexual evaluator's] suggestion. But I don't see that there's any—it isn't affecting your plea agreement, so I think we should proceed on that basis.

*Id.* at 19-10.

In relation to the objectionable hearsay, the prosecutor did provide context for the statement and gave "some minimal indicia of reliability" by explaining the circumstance under which the disclosure was made. Further, Woods' objection to

15

this information is irrelevant because the trial court explicitly said consideration of this information would not cause him to reject the plea agreement that had been agreed to by the parties. The trial court did follow the plea agreement and imposed the contemplated sentence. Woods has failed to establish that a constitutional violation occurred.

### B. Claim 2- Due Process

In conducting habeas review, a federal court is limited to deciding whether a state court decision violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011)(per curiam). Federal habeas corpus relief is not available for errors in the application of state sentencing laws absent a showing of fundamental unfairness. *See Christian v. Rhode*, 41 F. 3d 461, 469 (9th Cir. 1994)("absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief"). However, a state court's arbitrary disregard of state sentencing law and imposition of an unauthorized sentence may violate the defendant's due process rights. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980).

As set forth above, Woods' due process claim is that the 25-year parole restriction rendered his sentence facially invalid and, thus, illegal. Woods' argument is that by accepting the plea agreement that called for a 40-year sentence

16

rather than the 100-year sentence outlined in the statute, the trial court impliedly found a statutory exception and was, therefore, in error by applying the 25 year parole restriction. This argument did not persuade the Montana Supreme Court.

The Court found that the trial court had not intended to apply a sentencing exception in Woods' case and that the amended judgment unequivocally denied any such exception and indicated that the court "intended to impose the mandatory minimum sentence, or parole restriction, of 25 years under § 45-5-507(5)(a)(i), MCA." Order at 2, *Woods v. Laughlin*, No. OP 15-0277 (Mont. May 19, 2015). The court expressly determined that there was no sentencing exception applied in Woods' case and also that there was no support for Woods' argument that the trial court was without authority to impose a 25-year parole restriction simply because it did not also impose a 100-year sentence. *Id.* The Court held that because Woods failed to demonstrate that he is incarcerated under a facially invalid sentence, he is precluded from relief. *Id.* at 3-4.

This determination is not subject to review by a federal court. *See Mendez v. Small*, 298 F. 3d 1154, 1158 (9th Cir. 2002)("[a] state court has the last word on interpretation of state law")(citations omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Moreover, a state law issue cannot be mutated into one of federal constitutional

law merely by invoking the specter of a due process violation. *Langford v. Day*, 110 F. 3d 1380, 1389 (9th Cir. 1996).

Woods received the sentence contemplated in the plea agreement. He has not demonstrated fundamental unfairness or established that he received an unauthorized or invalid sentence. Accordingly, his due process claim is without merit.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C.. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Woods has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

# RECOMMENDATION

1. Mr. Wood's petition (Doc. 1) should be DENIED for lack of merit and DISMISSED WITH PREJUDICE.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Woods may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Woods must immediately notify the Court of any change in his mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 20th day of August, 2015.

Jeremiah C. Lynch
United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.